NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0481n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WENDELL SMITH, | ) | |
| | ) | **FILED**<br>**Jul 10, 2009**<br>LEONARD GREEN, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PIKE COUNTY, KENTUCKY; RODNEY A. | ) | EASTERN DISTRICT OF KENTUCKY |
| SCOTT; DEXTER COLEMAN; MARK | ) | |
| CANTRELL, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: DAUGHTREY, ROGERS, and KETHLEDGE, Circuit Judges.

**PER CURIAM.** Plaintiff Wendell Smith, in his capacity as administrator of the estate of Rachel Roberts and guardian of Roberts's two minor children, appeals the district court's grant of summary judgment to the defendants on claims resulting from Roberts's death while in custody at the Pike County Detention Center. The plaintiff alleged in his complaint that jail officials were liable under 42 U.S.C. § 1983 because they acted with deliberate indifference in failing to provide medical treatment for Roberts, in violation of the Fourteenth Amendment. The plaintiff also claimed that Pike County was subject to municipal liability under § 1983 for failure to train its officers and employees to assess intoxicated inmates for drug overdoses. The district court held that in the absence of a clearly established constitutional right to the specific medical treatment in question, the defendants were entitled to qualified immunity. We find no reversible error and affirm.

Following her arrest for public intoxication and possession of a controlled substance, Roberts arrived at the Pike County detention center for booking with glassy eyes and other signs of intoxication. In response to an intake screening questionnaire, she denied ingesting a dangerous quantity of drugs and indicated that she understood that she could ask for medical attention if she needed it. Because Roberts was able to walk, sign her name, and respond to questions, albeit with some difficulty, she was placed in a holding cell and observed through the cell window every twenty minutes, in accordance with jail policy. Jail personnel entered her cell once when she rolled off of her floor mat while sleeping and a second time when they attempted to wake her for dinner. Later that evening, approximately eight hours after booking, another inmate housed in Roberts's cell noticed that she was not breathing. Later autopsy results established that Roberts had died of an overdose of hydrocodone and oxycodone.

The evidence does not establish that jail officials were aware that Roberts had a sufficiently serious medical need or that they acted in conscious disregard by refusing medical care to Roberts. Although Roberts was clearly intoxicated, jail personnel had no indication that she was experiencing an overdose, and she did not appear to exhibit symptoms that would make it objectively clear that she had overdosed or was in immediate need of medical attention. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004). As the district judge characterized the situation:

> [Her] symptoms are not atypical nor do they distinguish Ms. Roberts from the
> multitude of drug and alcohol abusers the jail admits everyday. Fortunately,

2

> most, if not all, of those admitted "sleep off" their intoxication. Unfortunately,
> Ms. Roberts did not.

Because, at the time of the events at the Pike County jail, an intoxicated detainee had no clearly established constitutional right to a hospital evaluation in the absence of medical need that was both "apparent and serious," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), the district court correctly held that the defendants were entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1]  Finally, because there is no individual liability for a constitutional violation, there can be no municipal liability for failure to train. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Having had the benefit of oral argument, and having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in dismissing the complaint. Because the reasons why summary judgment was appropriately entered for the defendants have been fully articulated by the district court, the issuance of a detailed opinion by this court would be duplicative and would serve no useful purpose. Accordingly, we AFFIRM the judgment of the district court based upon the reasoning set out by that court in its memorandum opinion dated August 18, 2008.

---

[1]The Supreme Court recently addressed the test for qualified immunity found in *Saucier v. Katz.  See Pearson v. Callahan*, 129 S.Ct. 808 (2009). However, *Pearson* does not make a substantive change in the standard for qualified immunity; instead, it allows courts to re-order the procedural steps mandated by *Saucier.  See* 129 S. Ct. at 818. Thus, *Pearson* does not alter the qualified immunity analysis conducted by the district court in this case.