NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0278n.06

Nos. 09-1318, 09-1350

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 06, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **SHARON MEIER**, as Guardian and Conservator of Paul Meier, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| *Plaintiff-Appellant/Cross-Appellee*, | ) ) ) | |
| v. | ) ) | **O P I N I O N** |
| **COUNTY OF PRESQUE ISLE, et al.**, | ) ) | |
| *Defendants-Appellees/Cross-Appellants.* | | |

**BEFORE:** **GUY, COLE, and SUTTON, Circuit Judges**.

**COLE, Circuit Judge**. Plaintiff Sharon Meier appeals the district court's judgment dismissing her claims under 42 U.S.C. § 1983 for violations of her husband Paul Meier's civil rights by Defendants Presque Isle County, Sheriff Terry Flewelling, Deputy Sheriff Christopher Flewelling, Undersheriff Robert Paschke, Detective Stephen Porter, Corrections Officer Renee Szymanski and Corrections Officer Wendy Berg. The Plaintiff appealed, and the Defendants cross-appealed.

We **AFFIRM**.

## I. BACKGROUND

### A. Factual Background

During the afternoon of September 17, 2006, Paul Meier ("Meier") drove his automobile into a ditch and through a fence. Deputy Christopher Flewelling investigated the accident scene, and a witness to the accident identified Meier, who had fled the scene, as the driver. Flewelling found

Meier at a nearby residence and, upon questioning, detected a strong odor of alcohol and observed that Meier's eyes were glossy. Meier admitted that he was the driver of the car and that he had consumed four or five beers before the accident as well as vodka that morning and whiskey the night before. He said, however, that he had not consumed alcohol after the accident. Flewelling then conducted a series of field sobriety tests. Meier was unable to recite the alphabet and declined to attempt the "stork stance" and instead admitted that he was intoxicated. Flewelling placed Meier under arrest for operating a vehicle while under the influence of alcohol and driving with a suspended license.

Flewelling transferred Meier to the Presque Isle County Jail ("the Jail"). At the Jail, Flewelling administered a breath-analysis test on Meier at approximately 2:54 p.m. Meier registered a blood alcohol content ("BAC") level of 0.31 and refused a second breath-analysis test. The corrections officer responsible for booking arrestees, Renee Szymanski, then processed Meier for admittance to the Jail. Szymanski completed an initial screening report as well as an alcohol questionnaire and conducted a medical screening interview with Meier. The initial screening report states that Meier understood the interview questions, had bloodshot eyes, walked with a stagger, spoke with slurred speech, and emitted an odor of alcohol. According to the alcohol questionnaire, Meier told Szymanski that he drank beer daily and that he experiences "slight shaking" when he stops drinking. After completing the interview and observing Meier, Szymanski concluded that Meier did not exhibit signs of alcohol withdrawal or require emergency medical attention. However, because Meier's BAC exceeded 0.30, she contacted the doctor that the Jail keeps on-call for medical consultations, Dr. Robert Allum. In her deposition, Szymanski testified about their conversation:

> I told [Dr. Allum] that I had, a gentleman. I gave him his age; told him that he had a high [BAC] of .31. He then goes through some questions with me, is he able to speak, is he making sense, can he walk, can he carry on a conversation with you, does he know his whereabouts.

(District Court Record ("R.") 47, Ex. G, Szymanski Dep. at 14.) She told Dr. Allum that Meier was able to perform each of those activities and did not otherwise show signs of medical need. Dr. Allum responded that medical care was not required but that she should "keep an eye" on Meier.

The Jail's corrections officers are required to maintain a written log of inmate activities. Consistent with this policy, Szymanski recorded Meier's activities throughout her shift:

- 3:10 p.m. – Booked Paul Meier with BAC .of 31. "Subj very cooperative and states he drinks daily-may get the tremors. Contacted Dr. [Allum] ref his BAC and states to keep an eye on him, but if he is walking and talking, he should be ok."

- 3:30 p.m. – "Meier out of shower – smelt like a booze bottle."

- 4:00 p.m. – Szymanksi observed Meier laying on a mat.

- 4:25 p.m. – Meier "got up to eat."

- 8:15 p.m. – Meier was taken out of his cell to be fingerprinted and photographed. Meier was "already shaking."

- 8:25 p.m. – Meier was returned to his cell; his BAC was 0.217.

- 10:50 p.m. – Meier had "been sleeping all evening other than getting up for dinner, prints, etc."

(R. 47, Ex. N, Daily Activity Log.)

Szymanksi's shift ended at approximately 11:00 p.m., and Corrections Officer Lois Klann came on duty to replace her. Before Szymanski left, the two checked the cells together. In the activity log, Klann noted that she was advised of Meier's intoxication and that there were no

problems with the inmates throughout the night and early morning. She remained on duty until 7:00 a.m. At approximately 6:55 a.m. another corrections officer, Wendy Berg, began her shift. Together, Klann and Berg conducted a headcount of the inmates. Berg testified that she was told that Meier was intoxicated but did not recall whether she was instructed to monitor Meier. At 10:55 a.m., she noted in the activity log that "Meier is starting to feel real bad, thought it was from coming off of the alcohol." (*Id.*) In her deposition testimony, she described the circumstances of the log entry:

> I believe when I went by to make my head count, he was sitting up awake, where he had been – except for when he got up for breakfast, had been lying down most of the morning. And conversationally, I just went by and asked him how he was feeling, and he said he was starting to feel bad. And I asked him if he thought it was due to coming down from the alcohol, and he said yes, he believed that's what it was.

(R. 47, Ex. F, Berg Dep. at 8.) Berg also testified during her deposition that Meier did not appear to be shaking when she spoke with him shortly before 11:00 a.m.

At 1:15 p.m., the male inmates were permitted to go outside. Meier did not participate but remained in bed, facing a wall. At 1:32 p.m., Berg noticed something on the floor of the holding cell. She proceeded to investigate and found Meier lying face down on the floor in a pool of blood. She yelled to him several times, but he did not respond. She then asked Deputy Stephen Porter to assist her, and Porter instructed her to call an ambulance. At that point, according to Porter's deposition testimony, Meier was breathing but unconscious. Undersheriff Robert Paschke then arrived and, according to his deposition testimony, he observed Meier breathing but "gasping for air." (R. 47, Ex. Q, Paschke Dep. at 44.)

At approximately 2:00 p.m., an ambulance transported Meier to the Alpena Regional Medical

Center. The doctors there diagnosed him with acute respiratory failure as well as multiple lacerations on his face, mouth, and leg. They also determined that he had suffered a seizure and a head injury. He remained comatose for approximately six months.

**B.     Department Policies**

The Plaintiff has identified two Presque Isle County Sheriff Department policies that she considers relevant to this case. The first, G.O. # 034, states in pertinent part, that if an arrestee has a BAC of .30 or above, the arresting officer should "transport the subject to a Medical Facility and have him/her checked by a physician." The second policy, G.O. #031, is titled "Inmate Screening – Substance Abuse" and outlines the procedures corrections officers should follow in handling detainees under the influence of drugs or alcohol. It requires that if a corrections officer "feels that the arrested subject is too intoxicated, or is in need of medical treatment due to his/her injuries before his or her arrival at the [Jail]," the officer should not accept the arrested subject. It also requires a corrections officer to "immediately arrange for [an] inmate to receive medical treatment if the inmate appears to be displaying withdrawals, such as abdominal pain, has the sensations of something crawling on his/her skin, or has hallucinations." However, if an inmate "appears to be intoxicated but is not displaying any signs of drug or alcohol withdrawal, the duty [c]orrectional officer will place inmate into the holding cell, and observe the inmate closely."

**C.     Procedural History**

As her husband's guardian and conservator, Sharon Meier filed an action under 42 U.S.C. § 1983 for violation of Meier's Fourteenth Amendment right to medical care. In her amended complaint, she first alleged that the decision to place Meier into the Jail, rather than transfer him to

a medical facility, demonstrated deliberate indifference to serious medical needs. Second, she claimed that the corrections officers' response after Meier's seizure—in particular, their failure to move Meier and assist his breathing—demonstrated a deliberate indifference to his serious medical needs. Third, she asserted that the Jail's staff was improperly trained to assist intoxicated detainees. Finally, she alleged that the municipality adopted an informal policy to provide inadequate medical care to intoxicated inmates.

The Defendants moved for summary judgment. The district court granted the motion, finding that, although Ms. Meier arguably met her burden of demonstrating that her husband had an objective need for medical care, "she ha[d] not advanced sufficient evidence that Defendants recklessly disregarded an appreciated and serious medical risk." *Meier v. County of Presque Isle*, No. 07-13760-BC, 2009 U.S. Dist. LEXIS 10356, at \*3 (E.D. Mich. Feb. 11, 2009). The court also concluded that she had not met her burden of demonstrating that the municipality adopted an unconstitutional custom or failed to train adequately the Jail's officers. *Id.* at \*33. The Plaintiff then filed a motion to alter or amend the court's judgment, focusing on only the court's analysis of municipal liability. The court denied the motion, consistent with its prior opinion that individual liability is required for a finding of municipal liability.

Ms. Meier timely appealed, and Defendants timely cross-appealed, challenging the district court's finding that Ms. Meier had satisfied her burden as to the objective component of the medical indifference claim and arguing that the individual officers are entitled to qualified immunity.

## II. ANALYSIS

**A.      Standard of Review**

This Court reviews a grant of summary judgment de novo. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.      Deliberate Indifference Claims**

The Plaintiff has brought deliberate indifference claims under 42 U.S.C. § 1983 against the County of Presque Isle and county employees in their individual and official capacities.

*1.      Individual liability*

While the Eighth Amendment's prohibition on cruel and unusual punishment usually provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, where that claim is asserted on behalf of a pre-trial detainee, rather than a convicted prisoner, the Due Process Clause of the Fourteenth Amendment is the proper starting point for our analysis. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."). Under either amendment, the test for deliberate indifference includes both an objective

and subjective component, which the plaintiff bears the burden of demonstrating. *See Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).

The objective component requires a plaintiff to demonstrate "the existence of a sufficiently serious medical need." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (internal quotation marks omitted). The subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This standard requires a showing of "something more than mere negligence." *Farmer*, 511 U.S. at 835. Rather, the individual must have "recklessly disregard[]" the risk." *Id.* at 836. This is "a very high standard of culpability, *exceeding* gross negligence," *Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004) (internal quotation marks omitted). Because culpability under the test is personal, the subjective component must be addressed for each officer individually. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005).

Here, we conclude that the Plaintiff cannot satisfy this high standard of culpability for any of the defendants, and we therefore need not decide whether Meier faced an objectively serious risk of harm. *Cf. Mingus v. Butler*, 591 F.3d 474, 481 (6th Cir. 2010) ("Even if we assume, without deciding, that [plaintiff] faced an objectively serious risk of harm, [defendant] was not deliberately indifferent to that risk.").

*Defendant Christopher Flewelling*

There is no dispute that Flewelling knew Meier's BAC was 0.31, a BAC that Flewelling described in his deposition testimony as "pretty high." (R. 47, Ex. E, C. Flewelling Dep. at 35.) He also knew that Meier was incapable of passing sobriety tests and that his speech was slurred. However, Meier's intoxication by itself—even at the extreme level indicated by the BAC—was insufficient to put Flewelling on notice that Meier needed medical attention. *Cf. Schack v. City of Taylor*, 177 F. App'x 469, 472 (6th Cir. 2006) (holding that placing a highly intoxicated man, who exhibited no other signs of alcohol-related ailment, in a holding cell "does not violate contemporary standards of decency"). This is especially true because other signs indicated that Meier was not in need of medical care. At all times, he cooperated, communicated effectively, and walked unassisted. In addition, Meier told Flewelling that he was not under the care of a doctor. Moreover, Flewelling's decision to defer to the judgment of the booking clerk, who regularly confronts inebriated detainees, as to whether Meier needed medical attention was not unreasonable.

The Plaintiff points out that Flewelling did not comply with the departmental policy requiring that a subject with a BAC of .30 or above be transported to a medical facility. As an initial matter, it is not clear that Flewelling was aware of this policy. (*See* R. 47, Ex. E, C. Flewelling Dep. at 35.) But even if he was aware of the policy and failed to comply, his failure is not a per se constitutional violation. *Cf. Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that violation of state law was not a per se constitutional violation). Instead, the focus remains on whether Flewelling violated Meier's federal constitutional rights. And, here, the evidence does not show that Flewelling appreciated and recklessly disregarded Meier's medical needs.

*Defendant Renee Szymanski*

Similarly, the record does not indicate that Szymanski recklessly disregarded a serious medical need. Like Flewelling, she knew of Meier's BAC. She also knew of the departmental policy requiring medical attention for detainees with BACs above 0.30. Despite not complying with this policy, she did comply with the unwritten custom of calling a doctor for a consultation. After Szymanksi described Meier's condition to the on-call doctor, Dr. Allum, he told her that medical treatment was not necessary but to keep an eye on Meier. The record log of her activity demonstrates that she complied with the doctor's orders and monitored Meier. During the rest of her shift, no signs of medical need manifested. Thus, we conclude that it was not reckless for her to have followed Dr. Allum's instruction to monitor Meier rather than transfer him to a medical facility. In hindsight, it would have been preferable for Szymanksi to take different action, but the law does not require the best, or even the better, course. It requires only that the course taken not be reckless, and it was not.

*Defendant Wendy Berg*

The same can be said for Berg. While other actions might have been preferable, her actions were not reckless. At the beginning of her shift, she was advised of Meier's condition, and Meier told her that he was not feeling well. However, both Berg and Meier himself attributed his malaise to typical alcohol withdrawal. Thus, the signs were not sufficient to hold Berg liable. The Plaintiff also claims that Berg's response once she found Meier unconscious was improper. The record shows the opposite: Upon finding Meier, Berg immediately sought help from fellow officers and summoned an ambulance. The record does not show that she delayed in any way, defeating the

Plaintiff's claim.

*Defendants Robert Paschke and Stephen Porter*

Paschke and Porter responded to Berg's call for assistance. Finding Meier laying on his back in a pool of blood, the officers did not move him. Instead, Berg called an ambulance. When the ambulance arrived, according to Porter's deposition testimony, Meier was breathing but unconscious. Paschke agrees; according to his deposition testimony, he observed Meier breathing but "gasping for air." (R. 47, Ex. Q, Paschke Dep. at 44.) Relying on the testimony of Paramedic Michael Baker, the Plaintiff challenges their account. The Plaintiff argues that Meier was not breathing when the paramedics arrived, and, if the officers had rolled Meier onto his back and performed CPR, Meier's comatose state could have been prevented. But the officers had reason not to move Meier: They anticipated the ambulance would arrive in two minutes and feared that moving him might cause blood to pool in his airways or cause further injury. Rolling Meier onto his back might have been the better choice, but, as we have stated, that is not what the Constitution requires. Therefore, there is no genuine issue of material fact as to whether Porter and Paschke acted with deliberate indifference to Meier's medical care.

2.     *Supervisor liability*

The Plaintiff also claims that Sheriff Terry Flewelling, who approved the Presque Isle County policies, and Paschke, who trained the officers, are liable in their supervisory capacities. A supervisor is not liable for failing to train unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotation marks omitted). "At a minimum, a plaintiff must show

that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (internal quotation marks omitted). In other words, "[s]upervisor liability attaches when a supervisor encourages or condones a constitutional violation." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 314 (6th Cir. 2005). Here, because no constitutional violation occurred, the supervisors are not liable.

### 3. Municipal liability

The Plaintiff's final claim is against Presque Isle County for failing to properly train the Jail's staff and for adopting an informal policy of providing inadequate medical care to intoxicated inmates. The possibility of municipal liability, however, is foreclosed because "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins*, 273 F.3d at 687; *see also Cooper v. County of Washtenaw*, 222 F. App'x 459, 473 (6th Cir. 2007) ("Thus, this claim is inextricably linked to plaintiff's first claim: If the individual defendants have violated no constitutional right, the municipality cannot be liable under § 1983 for a failure to train.").

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.