NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0411n.06

Case Nos. 22-2044; 22-2046

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 21, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| THOMAS E. LUNNEEN, personal representative of the estate of Jack C. Lunneen, <br><br>    Plaintiff-Appellee, <br><br>v. <br><br>VILLAGE OF BERRIEN SPRINGS, MICHIGAN, et al., <br><br>    Defendants, <br><br>JAMES WYSS, in his individual capacity and in his official capacity as an Officer for the Berrien Springs-Oronoko Township Police Department (22-2044); ROGER JOHNSON, in his individual capacity and in his official capacity as a Sergeant for the Berrien County Sheriff's Department (22-2046), <br><br>    Defendants-Appellants. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN <br><br><br> OPINION |

Before: McKEAGUE, GRIFFIN, and MURPHY, Circuit Judges.

McKEAGUE, J., delivered the opinion of the court in which GRIFFIN, J., joined. MURPHY, J. (pp. 28–32), delivered a separate opinion concurring in part and dissenting in part.

**McKEAGUE, Circuit Judge.** Plaintiff Thomas Lunneen ("Plaintiff") brought suit against Officer James Wyss and Sergeant Roger Johnson (collectively, "the Officers") following the fatal arrest of his brother, Jack Lunneen ("Lunneen"). Plaintiff argues that the Officers used excessive force while arresting Lunneen and that they were grossly negligent for failing to provide medical

care to Lunneen. The district court found that qualified immunity shielded many of the Officers' interactions with Lunneen, including their use of a taser and pepper spray when attempting to get Lunneen on the ground. The district court denied summary judgment, however, on two aspects of the arrest: the Officers' use of force once they had Lunneen on the ground but before they handcuffed him, and Wyss's use of force after Lunneen was handcuffed. We lack jurisdiction to consider the Officers' evidentiary arguments at this stage. For those arguments properly before us, we AFFIRM.

## I. BACKGROUND

### A. Factual Background

Officer James Wyss of the Village of Berrien Springs-Oronoko Township Police Department and Sergeant Roger Johnson of the Berrien County Sheriff's Department were both on duty the night of October 22, 2018. The Departments share concurrent jurisdiction in the overlapping portions of the Village of Berrien Springs-Oronoko Township and Berrien County where the at-issue incident occurred. The incident was captured on both Officers' body cameras.

At approximately 1:15 a.m., Wyss first interacted with Lunneen when Lunneen rode his bicycle up to Wyss's patrol car and started talking to him. Wyss recognized that Lunneen was incoherent and agitated. At the time, Lunneen was fully dressed. Lunneen asked Wyss if he could speak with Johnson, an acquaintance of Lunneen's. After asking about Johnson, Lunneen rode off on his bicycle. Wyss followed Lunneen for a short amount of time and then lost sight of him. When Johnson subsequently drove by, Wyss flagged him down and described his interaction with Lunneen.

While talking with Johnson, Wyss got dispatched to the home of a local resident who reported a white, middle-aged, shirtless man running around outside of her home. The resident

reported that the man had pushed her air-conditioner unit into her home, breaking her living room window. Upon arrival at the scene, Wyss spoke with the resident who further described the incident. Wyss told the resident that he thought the man who destroyed her property was the same man who came up to his car earlier "spouting off a bunch of nonsense." Wyss Body Camera Footage, at 10:27–10:34. While still talking with the resident, Wyss observed Lunneen running towards downtown. Wyss attempted to follow Lunneen on foot, but quickly lost sight of him. He radioed Johnson to let him know that Lunneen was on the move.

Johnson spotted Lunneen while surveilling the area. Lunneen approached Johnson's patrol car and wanted to get inside. Johnson exited his patrol car and ordered Lunneen to the front.

Wyss then arrived on the scene. Wyss asked what was going on and Lunneen responded that he was an addict and currently climaxing. Lunneen also started shouting things like "HELP! YES! CALL THEM, MY PEOPLE HERE TOO!" and told the Officers that he "know[s] what[']s happening, and [you're] going to kill me." At this point, Lunneen was shirtless, sweating profusely, and had blood on him. It was thirty degrees outside. Johnson requested a paramedic from dispatch, citing possible excited delirium.

Johnson asked Wyss if he had probable cause to arrest Lunneen, and Wyss responded that there was probable cause to arrest him for malicious destruction of property.

The Officers then attempted to arrest Lunneen. First, Lunneen put his arms slightly behind his back and appeared compliant. But this compliance was short-lived; Lunneen quickly started backing away from the Officers. The Officers repeatedly told him to get down on his knees and stay out of the road. Lunneen responded by yelling things like "HELP," "PLEASE DON'T," and "I'M NOT THE ONE" as he moved towards the road while swinging his arms. Expert Transcript of Body Camera Footage, R. 57-15, PID # 569–70. After the Officers had been going back and

forth with Lunneen for approximately one minute and thirty seconds—including three warnings from Johnson that he was going to use his taser—Johnson tased Lunneen. Lunneen briefly keeled over, and he proceeded to rip the taser probes out of his chest and run back into the street. The Officers continued their pursuit and warnings. Wyss then hit Lunneen with pepper spray, first on the side of his head and then directly in the face.

Attempting to get Lunneen on the ground so he could be handcuffed, Wyss successfully used a leg sweep to get Lunneen's feet out from under him. While Lunneen was on the ground, he grabbed Wyss's leg. Wyss told Lunneen to let go and then applied pressure to his mandibular nerve to force him to let go.[1] Wyss reports that this tactic was successful because Lunneen then let go of his leg. The Officers' body camera footage also reveals that one of the Officers (Johnson, according to Plaintiff) had his hand on Lunneen's neck during this time. Further, the footage shows Johnson straddling Lunneen while Lunneen is on the ground.

After having Lunneen on the ground for approximately two minutes, the Officers were able to handcuff him, at which point Johnson immediately stepped away. Wyss, however, remained kneeling or standing beside Lunneen holding his handcuffs for almost two additional minutes. During this time Johnson pointed out that Lunneen was struggling to breathe and elevated his earlier request for a medic to a higher priority. The medic initially arrived where the Officers' patrol cars were parked, which, by this time, was approximately 100 yards away. The Officers attempted to flag down the medic and Johnson radioed dispatch to inform the medic of their new location. Once the medic arrived (approximately three minutes after Lunneen was handcuffed)

---

[1] Wyss described this move as requiring him to put his thumb underneath Lunneen's jawline and apply pressure upwards towards Lunneen's face.

the Officers assisted as requested in providing Lunneen medical care. However, they did not provide any medical care on their own before the medic arrived.

Lunneen was pronounced dead at 2:30 a.m. at a local hospital. His autopsy report detailed multiple blunt-force injuries to his head, trunk, and extremities; it also confirmed that there was methamphetamine in Lunneen's system. His cause of death was ruled excited delirium associated with methamphetamine use. But the manner of death was deemed "indeterminate" based on the "significant debate in the medical community regarding manner of death certification in excited delirium deaths associated with law enforcement intervention." Postmortem Examination Rep., R. 81-6, PID # 900. Plaintiff provided reports from three medical experts who dispute the cause-of-death finding and believe that Lunneen died of asphyxiation.

## B. Procedural Background

Plaintiff, as representative of Lunneen's estate, filed suit in the Western District of Michigan. He raised excessive force, unconstitutional conditions of detainment, and unconstitutional denial of medical care claims under 42 U.S.C. § 1983—as well as a state-law gross negligence claim—against Defendants Wyss and Johnson. He also brought *Monell* claims against Berrien Springs, Oronoko Township, Chief Paul Toliver, Berrien County, and Sheriff Paul Bailey. Plaintiff further alleged that Berrien County, Berrien Springs, and Oronoko Township violated various state constitutional guarantees.

The defendants all moved for summary judgment. The district court granted in part and denied in part the motions. The district court granted summary judgment to the municipal defendants on the *Monell* claims and the state constitutional claims. *Lunneen v. Vill. of Berrien Springs*, No. 1:20-CV-1007, 2022 WL 16569574, at *12–13, 15 (W.D. Mich. Nov. 1, 2022). The district court also granted summary judgment to Wyss and Johnson on Plaintiff's federal denial of

medical care and unconstitutional conditions of detainment claims. The district court broke the excessive force claim into five parts, considering each "officer's entitlement to qualified immunity each step along the way." *Id.* at \*4 (citation omitted).

The first step was Johnson's use of his taser, and the second was Wyss's use of pepper spray. The district court found these actions reasonable. Next, the district court considered the physical takedown of Lunneen, again finding the Officers' actions reasonable. But the district court found that a genuine dispute of material fact remained about whether the Officers used unconstitutional force after they got Lunneen on the ground but before he was handcuffed, and about whether Wyss used unconstitutional force after Lunneen was handcuffed. It also found that, when viewing those disputed facts in Plaintiff's favor, the "right to be free from substantial or significant pressure that creates asphyxiating conditions while being restrained on the ground is clearly established." *Id.* at \*9. The final step—leaving Lunneen handcuffed on the ground—did not involve a clearly established right, and thus the district court granted qualified immunity.

As for Lunneen's state law gross negligence claim against Wyss and Johnson, the district court determined the claim relied on two theories: first, the Officers' failure to refrain from using deadly force; and second, their denial of medical care. Because the first theory relied on intentional actions, and not negligence, the district court dismissed that portion. But the district court declined to dismiss the gross negligence claim entirely and allowed it to proceed based on the denial of medical care theory. Plaintiff did not appeal the district court's decision. Johnson and Wyss appeal each of the outstanding claims against them.

## II. ANALYSIS

We review the denial of qualified immunity and Michigan governmental immunity de novo, viewing the facts in the light most favorable to the plaintiff. *Bey v. Falk*, 946 F.3d 304, 311–12 (6th Cir. 2019); *Kindl v. City of Berkley*, 798 F.3d 391, 403 (6th Cir. 2015).

### A. Excessive Force

We have jurisdiction to review a district court's denial of qualified immunity at summary judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); 28 U.S.C. § 1291. This jurisdiction is limited, *Estate of Hill ex rel. Hill v. Miracle*, 853 F.3d 306, 311 (6th Cir. 2017), for it exists only "to the extent that [the denial] turns on an issue of law," *Gillispie v. Miami Twp.*, 18 F.4th 909, 915 (6th Cir. 2021) (citing *Mitchell*, 472 U.S. at 530). Our jurisdiction clearly exists when the defendant does not contest the plaintiff's version of the facts, *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998), and when "the legal issues are discrete from the factual disputes," *Adams v. Blount Cnty.*, 946 F.3d 940, 951 (6th Cir. 2020) (citation omitted). Generally, however, a defendant cannot appeal a denial of qualified immunity "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995).

There is an exception. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). We thus have jurisdiction to reverse a district court's determination that a dispute of fact exists when "the plaintiff's version of the facts, which the district court accepted," is "'utterly discredited by the record.'" *Clay v. Emmi*, 797 F.3d 364, 368

(6th Cir. 2015) (citation omitted); *see also Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012) (stating that this happens only in "exceptional circumstances").

Qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts undertake a two-pronged inquiry to determine an officer's entitlement to qualified immunity in the excessive force context, examining both: "(1) whether the officer violated the plaintiff's constitutional rights under the Fourth Amendment; and (2) whether that constitutional right was clearly established at the time of the incident." *Hill*, 853 F.3d at 312 (citation omitted). The two prongs can be addressed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity shields an officer's actions if either inquiry is answered in the negative. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

The Fourth Amendment protects an individual's right to be free from "excessive force during an arrest." *LaPlante v. City of Battle Creek*, 30 F.4th 572, 579 (6th Cir. 2022). To determine if an officer's use of force violates the Fourth Amendment, courts apply an objective reasonableness standard, considering an officer's actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Objective reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. The Fourth Amendment does not require police officers to take the best approach; they need only take a reasonable approach. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 486 (6th Cir. 2017).

To determine whether an officer's use of force is reasonable, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotation marks and citations omitted). Three *Graham* factors guide this balancing act: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Hill*, 853 F.3d at 312 (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396). This is a fact-intensive inquiry, and "summary judgment is improper if the legal question of immunity turns on which version of the facts is accepted, because then the reasonableness of the use of force is the linchpin of the case." *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007) (internal quotation marks and citations omitted).

As stated above, the district court granted qualified immunity to the Officers for Johnson's use of his taser, Wyss's use of his pepper spray, their joint physical takedown of Lunneen, and their decision to leave Lunneen handcuffed on the ground without using any force. At issue is the district court's denial of qualified immunity for the Officers' joint efforts to subdue Lunneen on the ground and Wyss's post-handcuff pressure.

### 1. Subduing Lunneen

Once Lunneen was on the ground, a struggle ensued while both Officers attempted to handcuff him. The district court found that disputes of fact precluded summary judgment and that the right at issue was clearly established. *Lunneen*, 2022 WL 16569574, at *7–10.

#### a. Was there a constitutional violation?

The first *Graham* factor—the severity of the crime at issue—suggests that it was reasonable to use some force in effecting Lunneen's arrest. Viewing the evidence in the light most favorable to Plaintiff, the Officers had probable cause to arrest Lunneen for misdemeanor malicious destruction of property. The right to make an arrest "necessarily carries with it the right to use

some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *but see Bozung v. Rawson*, 439 F. App'x 513, 520 (6th Cir. 2011) (explaining that when a crime is not violent or serious, it "weighs in favor of using less force in arresting someone for such conduct" (citation omitted)). "But the question is not whether any force was justified. It is, instead, whether [the Officers] could reasonably use the *degree* of force employed against" Lunneen. *Martin*, 712 F.3d at 958.

The next consideration is whether Lunneen posed a threat to the Officers or others. *Graham*, 490 U.S. at 396. The Officers both admit that Lunneen appeared to be unarmed and mentally unstable. In such a situation, an officer's interest in using force is weakened. *See Martin*, 712 F.3d at 958; *Landis v. Baker*, 297 F. App'x 453, 465 (6th Cir. 2008) ("[W]hen police are confronted by an unarmed, emotionally distraught individual who has committed no serious crime, as opposed to an armed and dangerous criminal, the governmental interest in using force is diminished, not strengthened, even when the suspect is irrational and inviting the use of force." (citation omitted)). For this consideration, courts look to the "immediate threat" a suspect poses. *Graham*, 490 U.S. at 396. The Officers argue that Lunneen posed a threat to them because he "charged at the officers, swung his arms at the officers, and was unable to be restrained even through the use of a Taser and [pepper] spray." Wyss Opening Br. at 26; *see also* Johnson Opening Br. at 13.[2] However, these actions occurred before Lunneen was on the ground. Nevertheless, Lunneen appeared to be a danger to himself, thus justifying the use of some force to detain him. *See, e.g.*, *Cook v. Bastin*, 590 F. App'x 523, 530 (6th Cir. 2014).

---

[2] Plaintiff disputes this description of the events. R. 98, PID # 1267 ("When viewed in the light most favorable to Plaintiff, the evidence shows Jack was 'flailing' his arms about in an uncoordinated fashion, attempting to swat at red beam from Johnson's laser, pulling the taser probes from his chest, and swatting away the mist from Wyss's [pepper] spray, *not* 'swatting at' or 'swinging for' the officers." (Internal citation omitted)).

The final *Graham* factor is whether the suspect was actively resisting arrest. *Graham*, 490 U.S. at 396. "Active resistance includes 'physically struggling with, threatening, or disobeying officers.'" *Rudlaff v. Gillispie*, 791 F.3d 638, 641–42 (6th Cir. 2015) (citation omitted). If a suspect stops resisting arrest and is compliant when the challenged force occurs, this factor weighs against the use of force. *Id.* at 641; *see also Martin*, 712 F.3d at 959 ("[T]o the extent the officers contend the force they used was reasonable merely because Martin offered some resistance before he was handcuffed, our precedents foreclose this line of argument."). Before Lunneen was on the ground, the district court found that he was actively resisting arrest, *Lunneen*, 2022 WL 16569574, at *5, but the situation was different after he was on the ground, *id.* at *8.

Once Lunneen was on the ground, the following conversation took place:

> Wyss: Gimme your hand, gimme your hand
> Lunneen: Why, don't
> Wyss: On your stomach, nope roll over
> Lunneen: *groans*
> Wyss: Roll over
> Lunneen: Help
> Johnson: Roll over now
> Lunneen: *groans*
> Wyss: Gimme your hand, c'mon roll over
> Lunneen: Help
>     Help
>     Help *mumbles*
> Wyss: Get your hands off
> Lunneen: Ow
> Wyss: Roll Over
> Johnson: Roll over, do it now
> Lunneen: *mumbles*
>     Help
>     Stop
> Wyss: C'mon, roll over
> Lunneen: I'm trying
> Johnson: Roll over
> Lunneen: Sorry guys
>     Help me please
>     For the sake of god
> Wyss: C'mon roll over

> Lunneen:  Help me
> >        Don't
> Wyss:  Nope don't grab me
> >        Don't grab me
> Lunneen:  I won't
> >        *mumbles*
> >        I fucked up, I'm sorry
> Wyss:  C'mon give us your hands
> Lunneen:  Hands off please
> Wyss:  Roll to your left alright
> Lunneen:  Let go
> >        No, I don't need it
> >        Guys don't
> Wyss:  C'mon
> >        Give us your hands
> Lunneen:  Guys *groans*
> >        *groans*
> Wyss:  C'mon
> Lunneen:  *groans*
> >        *groans*
> >        Let go of me
> >        *groans*
> >        Why
> >        I'm sorry sir, I'm sorry
> Wyss:  Let go of me, let go of me
> Lunneen: Sir
> Wyss:  Let go of me
> [*Lunneen continues to mumble while the Officers place him in cuffs. *]

R. 57-15, PID # 572–74.  The district court found this conversation—specifically when Lunneen

states that he is trying to roll over, he is sorry, he needs help, and he "fucked up"—makes Lunneen

appear verbally compliant after he was on the ground.  *Lunneen*, 2022 WL 16569574, at *8.  The

district court went on to recognize, however, that "Lunneen might have offered some resistance by

grabbing Wyss's leg."  *Id.* (emphasis omitted).  The district court concluded, seemingly based on

these two pieces of evidence, that a jury could "infer that Lunneen was no longer actively resisting

arrest."  *Id.*

    With these factors in mind, our ultimate inquiry is whether the totality of the circumstances

justified the Officers' actions here.  *See Roell*, 870 F.3d at 483; *Martin*, 712 F.3d at 960.

Wyss admits that he applied mandibular pressure while attempting to subdue Lunneen on the ground. Wyss says he used this pressure to force Lunneen to let go of his leg.[3] *Id.* Because "the body camera footage does not capture Wyss's application of mandibular pressure because of the physical struggle and closeness of body parts to the camera . . . the degree of mandibular pressure and length of time it was applied is not clear," and thus the district court concluded that whether Wyss applied substantial pressure to Lunneen's head or neck was a question for the jury. *Lunneen*, 2022 WL 16569574, at *7.

Plaintiff also alleges that Johnson applied pressure to Lunneen's neck, and Johnson's body camera footage confirms that *an* officer's hand was on Lunneen's neck. Again, the district court concluded that a genuine dispute remained about whether Johnson applied substantial or significant pressure to Lunneen's head or neck. *Lunneen*, 2022 WL 16569574, at *7.

Plaintiff's expert, Dr. Freeman, a consultant in forensic medicine and forensic epidemiology, concluded that, although the damage from the pressure on Lunneen's neck was "difficult to quantify (as the duration of the neck hold was brief), the degree of compression at Mr. Lunneen's neck is reasonably associated with the petechiae observed at autopsy, and as such may have contributed the restraint-related asphyxial forces applied to Mr. Lunneen's body." R. 57-7, PID # 447. Further, Lunneen's autopsy revealed injuries to his face, nose, and mouth. The Officers provided the district court no explanation for these injuries.[4]

---

[3] At his deposition, Wyss explained that he was concerned about Lunneen grabbing his leg in part because he had a gun strapped there. Plaintiff disputes Wyss's story, pointing out that Wyss did not include this ostensibly crucial fact in his post-incident report. The district court seemingly declined to accept Wyss's version of events. *Lunneen*, 2022 WL 16569574, at *7. Wyss does not challenge this finding on appeal. Wyss Opening Br. at 22 ("[W]hether or not Officer Wyss was carrying a firearm concealed in his boot is irrelevant as to whether a reasonable officer could conclude that Lunneen's active resistance was continuing.").

[4] When questioned about this oversight at oral argument, Wyss's counsel proffered that the injuries could have been caused by the medic's actions just before Lunneen's death. Johnson's counsel offered similar

The video footage from Wyss's body camera also shows Johnson straddling Lunneen. Plaintiff argued that while in this position Johnson used his body weight to apply pressure to Lunneen's back or torso. The district court found the footage inconclusive as to what amount of pressure, if any, Johnson applied. *Lunneen*, 2022 WL 16569574, at *8. Dr. Freeman also found that pressure to Lunneen's back or torso likely contributed to his death, and explained the impact of such actions:

> Obese individuals with a protruding belly like Mr. Lunneen are at heightened risk of positional asphyxia when in a prone position, due to pressure against the diaphragm by the belly, thus restricting gas exchange in the lungs. The restraint conditions that Mr. Lunneen was subject to during his arrest have been demonstrated to result in impaired breathing capacity and lung function.

Dr. Freeman Rep., R. 57-7, PID # 445. Lunneen's autopsy also revealed "large areas of hemorrhage in the soft tissues and deep muscles of [his] mid and lower back," which one of Plaintiff's experts explains was the result of significant levels of back pressure. Baden Report, R. 57-3, PID # 389.

Viewing this evidence in the light most favorable to Plaintiff, a jury could find that the Officers' conduct was unreasonable. *Cf. Martin*, 712 F.3d at 960 ("These tactics were not justified by Martin's possible crime, the threat he posed to anyone's safety, or his resistance."). This conclusion is reinforced "in light of testimony regarding the training that [the officers] received." *Id.* (quoting *Griffith*, 473 F.3d at 657) (alteration in original). Both Officers received training or reviewed policies that related to the use of force against a suspect who is mentally ill or under the influence of drugs. Wyss's training included information about the need to avoid pressure on those

---

justifications, before conceding that "some of the bruising was absolutely caused by the interactions with the Officers." Neither Officer addressed alternative sources for Lunneen's injuries in their appellate briefs (or below, for that matter), thus waiving the arguments. *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 450 n.6 (6th Cir. 2008).

individuals' backs, and Johnson's training included the need to avoid placing people on their stomach with their hands behind their backs. Awareness of these policies can serve as evidence that the Officers' application of pressure to Lunneen's neck and back was unreasonable. *Id.* ("The officers' awareness of a policy that warns of the boundaries of appropriate force with respect to the danger of positional asphyxia reinforces the conclusion that their conduct was unreasonable.").

The Officers take issue with numerous aspects of the district court's analysis. They argue that Lunneen was actively resisting during this period, as the "video clearly shows that Lunneen, whatever he was saying out loud, was not being compliant with the officers on the ground, was not rolling over when repeatedly instructed, was not giving them his hands, and was continuing to grapple with the officers from the ground." Johnson Opening Br. at 22; *see also* Wyss Opening Br. at 22 ("Lunneen resisted arrest and continued to do so. This fact is undisputed and confirmed by the body worn camera footage which is consistent with the deposition testimony of Officer Wyss and Sergeant Johnson."). The video does not clearly show this: during this crucial time period, the footage is either completely dark or does not provide a full picture of Lunneen's actions, instead focusing, for example, on only Lunneen's face. Johnson also argues that Lunneen was not verbally compliant. However, the district court's view of the facts is not "blatantly contradicted by the record," and thus we do not have jurisdiction to review the Officers' factual challenges. *See Scott*, 550 U.S. at 380.

Similarly, the Officers dispute how much force was applied to Lunneen's neck and back. But "[h]ow much force was applied and for how long are disputed factual issues a jury must decide." *Martin*, 712 F.3d at 955 n.1; *see also Hopper v. Plummer*, 887 F.3d 744, 752 (6th Cir. 2018). The video footage does not clearly show that the pressure applied was insubstantial or insignificant.

Next, the Officers point out that *Plaintiff's* police practice expert, Jeffrey J. Noble, concluded that the Officers' use of force in attempting to subdue Lunneen was reasonable. Noble Expert Report, R. 57-1, PID # 361 ("The use of a take down and the control holds used to placed handcuffs on Mr. Lunneen were objectively reasonable and consistent with generally accepted police practices."). But Noble's testimony is not based on a view of the facts in the light most favorable to Plaintiff. Instead, it relies on the conclusion that Lunneen was actively resisting arrest. Further, this argument is one about the sufficiency of the evidence on which the district court relied, and it is thus not reviewable at this stage. *See DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 611–12 (6th Cir. 2015) ("For each of their challenges, we will discard the fact-based or 'evidence sufficiency' portion of the appeal—that is, any challenge to the district court's view of the facts or its associated inferences or, more frequently, any challenge to [the plaintiff's] version of the record-supported evidence—and resolve the legal challenge based on those given facts and inferences."). Johnson's related argument that Plaintiff cannot prove excessive force without expert testimony lacks merit; we do not require expert testimony to prove excessive force. *Cf. Cyrus v. Town of Mukwonago*, 624 F.3d 856, 864 (7th Cir. 2010) (rejecting the argument that expert testimony is required for an excessive force claim).

Johnson further argues that the district court's reliance "on the testimony of Dr. Freeman to find a question of material fact as to whether Officer Wyss or Sgt. Johnson applied asphyxiating pressure to Lunneen's back while he was on the ground" was improper, because Dr. Freeman offers only inferences and speculation. Johnson Reply Br. at 11–12 (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).[5] But each of Plaintiff's three medical experts opined that

---

[5] At the district court, the Officers argued that Dr. Freeman's testimony should be excluded. The district court denied that motion, a finding that Johnson does not appeal.

Lunneen's death was caused by asphyxiation as a result of the Officers' actions. *See* Dr. Freeman Rep., R. 57-7, PID # 455 ("Based on the preceding analysis, it is my opinion that Mr. Lunneen's death was the result of the use of excessive force by the Berrien County Police Department personnel, resulting in death by asphyxia-triggered cardiopulmonary arrest."); Dr. Wohlgelernter Rep., R. 57-11, PID # 513 ("It is my opinion, with a reasonable degree of medical certainty, that Jack Lunneen's death was due to restraint/compressive asphyxia with mechanical obstruction of respiration, secondary to compressive force applied to his torso by the police officers with resultant respiratory compromise and subsequent development of hypoxia/hypoxemia causing asystole and PEA cardiac arrest."); Dr. Baden Rep., R. 57-3, PID # 391–92. ("It is my opinion, to a reasonable degree of medical certainty, . . . that the cause of Mr. Luneen's death was not excited delirium; that he died because of the way in which he was restrained by the police which prevented him from breathing."). As such, Johnson's argument lacks merit.

### b. Was the right clearly established?

The next inquiry is whether at the time Lunneen was arrested the contours of the right allegedly violated were "'sufficiently clear' [such that] that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). Excessive force cases are highly fact dependent, "and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Wiley v. City of Columbus*, 36 F.4th 661, 669 (6th Cir. 2022) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). We thus ask whether it was clearly established in October 2018 that it was excessive force for an officer to apply substantial pressure that creates

asphyxiating conditions to the back and neck of suspect who was clearly distressed, unarmed, and not actively resisting as they attempted to handcuff him.[6]

The use of severe force, including applying pressure to the back of a prone suspect or utilizing a neck restraint, "against an unarmed and minimally threatening individual before he was subdued violates the Constitution." *Martin*, 712 F.3d at 961–62; *see also Griffith*, 473 F.3d at 660 ("[I]f the jury concludes that [the officer] used the neck restraint without an objectively reasonable belief that [the decedent] posed a threat of serious bodily injury, then it is obvious to us that 'no reasonable officer could believe that such [use of force] would not violate another's constitutional rights.'" (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989)). We need not match each application of force with a precisely analogous case, as this prohibition is clear "from direct holdings" and "the general reasoning" that these prior cases have employed. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (citation omitted).

The Officers' arguments that the law was not clearly established—arguments our dissenting colleague generally adopts as to Wyss, *see* Dissenting Op. at 30–31—suffer from the same fatal flaw: they require the court to disregard its directive to view the facts in the light most favorable to the plaintiff. *Cf. Bolick v. City of E. Grand Rapids*, 580 F. App'x 314, 322 (6th Cir. 2014) ("A view of the record in [the plaintiff's] favor (which shows that he was barely able to move and did not resist) controls our analysis, not one that considers whether every reasonable officer would have acted differently under a situation drawn more in their favor."). For example, Johnson argues

---

[6] Plaintiff argues that Johnson waived any argument that this right was not clearly established. Although he did not explicitly state that he was challenging the district court's clearly established analysis, Johnson devoted much of his brief to contesting the applicability of *Champion* and *Martin*, two cases the district court relied on when finding the right clearly established. *Lunneen*, 2022 WL 16569574, at *9–10. We view this as an argument that the law was not clearly established. *See also* Johnson Reply Br. at 4 ("Therefore, this Court has jurisdiction to consider the actions of Sgt. Johnson and if they constitute a violation of clearly established law as it existed at the time of the incident.").

that *Champion* requires more than incidental application of pressure to a suspect's back and the dissent posits that Wyss used much less force than the officers in *Martin*, Dissenting Op. at 30. Similarly, Wyss argues that *Griffith* can be distinguished because Wyss's use of the mandibular technique was provoked and it was shorter in duration than the neck restraint in *Griffith*. Maybe so. But determining that Johnson's application of pressure to Lunneen's back was only "incidental," that Wyss's technique involved limited force, or that Wyss was provoked requires us to view the facts in the light most favorable to the Officers, not Plaintiff. And, in any event, the clearly established inquiry does not require a "materially similar" case. *Martin*, 712 F.3d at 961 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see also Champion*, 380 F.3d at 902. Accordingly, even if the force or situation here is not precisely analogous to that in *Champion*, *Martin*, or *Griffith*, the Officers were still on notice that their conduct was unlawful. *Contra* Dissenting Op. at 30.

The Officers' best case is *Wiley v. City of Columbus*, but it too is distinguishable. There, the decedent continued to struggle after being handcuffed, and was held down by three officers. 36 F.4th at 666. One officer crossed the decedent's legs, bent them at the knee and placed them against his buttocks, then leaned against his legs. *Id*. Another officer had his knee on the decedent's back. *Id.* A third officer had his knees against the decedent's shoulder to inhibit his movements. *Id.* The decedent was kept in this position for approximately ninety seconds, and he subsequently died. *Id.* The cause of death was disputed; the plaintiff's expert opined that the death was from "cardiac arrest caused by 'forcible restraint that precluded adequate breathing.'" *Id.* at 666–67. Passing on the question of whether the officers' actions rose to a constitutional violation, the *Wiley* court concluded that the law did not clearly establish that these actions were unconstitutional. *Id.* at 669. To reach this conclusion, the court relied on one officer's

uncontroverted testimony that he did not apply pressure to the decedent's chest or breathing cavity. *Id.* at 669. Here, there is no such uncontradicted evidence; the video footage arguably shows that the Officers applied force to Lunneen's neck and back. The *Wiley* court further found the law was not clearly established because the decedent there was "consistently resist[ing]" when the force was used. *Id.* Viewing the evidence in the light most favorable to Plaintiff, that is not the case here. Finally, the *Wiley* court noted that, although the decedent had bruising on his back that the plaintiff said was a result of pressure from an officer's knee, this was only speculation. *Id.* at 668. There, there were numerous potential sources of the bruising, only one of which was an officers' knee. *Id.* Here, there is also bruising that Plaintiff says occurred because of the Officers' excessive use of force. But, unlike *Wiley*, the Officers provided the district court no alternative source for the injuries and bruising. *Wiley* does not change the clearly established inquiry here.

One more point is worth addressing on this topic. Beyond agreeing with Wyss that the law here is not clearly established, the dissent reads the law to *permit* Wyss's use of the mandibular technique. Dissenting Op. at 29. As support, our colleague cites *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006). We agree that *Shreve* held that the defendants there were justified in using pressure point submissions to handcuff a passively resisting suspect. *Shreve*, 453 F.3d at 687. We disagree, however, that no reasonable jury could find that the actions here fall outside *Shreve*'s scope. Viewed in the light most favorable to Plaintiff, the evidence demonstrates that Wyss's mandibular technique amounted to *substantial* pressure that created asphyxiating conditions. As a result, the force of Wyss's mandibular technique may far surpass that of the pressure point submissions used in *Shreve* and constitute incommensurate force. To be sure, as the dissent suggests, we do not suspect a reasonable jury would liken Wyss's actions to

open fire. But to say the actions could not have amounted to "deadly force" overlooks Plaintiff's expert reports. *See, e.g.*, Dr. Wohlgelernter Rep., R. 57-11.

At bottom, the Officers are not entitled to qualified immunity for their actions subduing Lunneen.

### 2. Post-Handcuff Pressure

After the Officers handcuffed Lunneen, Wyss remained kneeling or standing next to Lunneen for approximately two minutes, keeping at least one hand in contact with Lunneen's handcuffs, back, or both. *Lunneen*, 2022 WL 16569574, at *9. Johnson stood up immediately after Lunneen was handcuffed; this allegation thus relates solely to Wyss. The district court found that disputes of fact precluded summary judgment and that, viewing that disputed evidence in Plaintiff's favor, the right at issue was clearly established. *Lunneen*, 2022 WL 16569574, at *9–10.

### a. Was there a constitutional violation?

No one alleges that Lunneen resisted after the Officers handcuffed him. The balance thus shifts, and the justification for the use of force is reduced. *Cf. Martin*, 712 F.3d at 959; *see also Cyrus*, 624 F.3d at 863 ("[A]s the threat changes, so too should the degree of force." (citation omitted)).

The district court concluded that a genuine dispute of material fact exists as to whether "Wyss applied substantial or significant pressure while holding Lunneen's handcuffs," "Lunneen remained prone, partially prone, or not prone at all," and whether the "application of pressure created asphyxiating conditions." *Lunneen*, 2022 WL 16569574, at *9. These factual disputes preclude summary judgment. *See Champion*, 380 F.3d at 900 ("[W]here the legal question of

qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." (internal quotation marks and citation omitted)).

Wyss argues that the district court erred because "[t]here is nothing unreasonable and unconstitutional about *merely holding onto the handcuffs* following the erratic behavior and extensive resistance displayed by Lunneen before he was detained." Wyss Opening Br. at 33 (emphasis added). But Wyss's argument is based on his own version of the facts—that he was "merely holding onto the handcuffs." The video footage does not indisputably demonstrate this; Wyss's hand often appears to be in contact with Lunneen's back during this time and the amount of pressure he applies is not clear. And, as discussed above, Plaintiff's expert opined that Lunneen's autopsy revealed "large areas of hemorrhage in the soft tissues and deep muscles of the mid and lower back bilaterally, evidence of severe prone back pressure." R. 57-3, PID # 389; *see also* R. 57-11 (report by Dr. Wohlgelernter, who concluded that Lunneen died from "restraint/compressive asphyxia with mechanical obstruction of respiration, secondary to compressive force applied to his torso by the police officers with resultant respiratory compromise and subsequent development of hypoxia/hypoxemia causing asystole and PEA cardiac arrest").

The ambiguous video footage and expert evidence are sufficient to allow a reasonable jury to conclude that Wyss applied substantial or significant pressure, thereby creating asphyxiating conditions while Lunneen was handcuffed and prone. A jury could thus find that Wyss acted unreasonably.

### b. Was the law clearly established?

Clearly established law prohibits "putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated." *Champion*, 380 F.3d at 903; *see also Martin*, 712 F.3d at 961 ("The prohibition against placing

weight on [the plaintiff's] body *after* he was handcuffed was clearly established."); *Kulpa ex rel. Kulpa v. Cantea*, 708 F. App'x 846, 853 (6th Cir. 2017) ("*Champion*[] . . . clearly articulated that driving heavy pressure into a prone, handcuffed, incapacitated detainee's back was constitutionally impermissible . . . ."). The degree of force required has not been defined beyond being "substantial or significant." *Champion*, 380 F.3d at 903. It is similarly clearly established that the law prohibits creating "asphyxiating conditions by 'forcibly restraining an individual in a prone position for a prolonged period of time' when that individual posed no material threat." *Hopper*, 887 F.3d at 756.

Wyss and our dissenting colleague offer several counterarguments. None change the result. First, Wyss argues, and the dissent agrees, Dissenting Op. at 32, that the law is not clearly established because Wyss was never entirely on top of Lunneen. But we do not need a case with precisely analogous facts for the law to be clearly established. *Champion*, 380 F.3d at 902. Wyss also repeatedly reiterates that he never applied any pressure to Lunneen's back—another argument that the dissent adopts. However, as the district court correctly concluded, how much pressure Wyss applied is a question for the jury; this is not "'blatantly and demonstrably false' based on irrefutable evidence such as clear video footage," *Kindl*, 798 F.3d at 399 (quoting *Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009)), and thus we lack jurisdiction to consider this factual argument. The dissent similarly wades into a factual question. *See* Dissenting Op. at 31. In doing so, it attempts to avoid the jurisdictional issue by claiming that the Officers' body camera footage unambiguously shows that Lunneen was not laying on his stomach. *Id*. But we are not so convinced. Accordingly, Wyss is not entitled to qualified immunity for his use of post-handcuff pressure.

### B. State-Law Gross Negligence

The "Gross Negligence" portion of Plaintiff's complaint states:

191. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

192. Defendants Wyss and Johnson owed Decedent, Jack Lunneen, the duty to refrain from using deadly force until they had exhausted all other reasonable means of effecting his detainment and/or arrest.

193. Defendants Wyss and Johnson, want only and recklessly breached that duty by using excessive and/or deadly force on Jack Lunneen without the slightest attempt to use alternative means to apprehend him, where they knew those means were available, and intentionally failed to use them.

194. As a proximate result of that gross negligence, plaintiff suffered death, pain and suffering, loss of earnings and earning capacity, loss of enjoyment of life, disfigurement, emotional overlay and medical care, all past, present and future.

195. As a direct and proximate result of the acts and omissions of Defendants Johnson and Wyss, Decedent was injured and suffered the damages as more particularly set forth below in the section of this Complaint entitled "Damages."

R. 1, PID #27-28. Yet, despite the fact that this does not channel a denial-of-medical-care theory, Plaintiff responded to the Officers' motions for summary judgment by stating that Johnson and Wyss's actions in denying Lunneen medical care also support the gross negligence claim. Recognizing that "Plaintiff did not rely on this theory of gross negligence in his complaint," *Lunneen*, 2022 WL 16569574, at *14, the district court nevertheless permitted the claim to proceed, concluding that "the factual 'parameters' of Plaintiff's § 1983 claim and attendant state law claims remain the same at the summary judgment stage as they were when Plaintiff filed his complaint," and thus the Officers "had the opportunity to factually develop the claim of denial of medical care during discovery." *Id.*

The Officers argue that the district court erred by permitting the gross negligence in the denial of medical care theory to proceed, as it was a new theory raised only in response to summary

judgment. Johnson also argues that summary judgment is proper based on the merits of the gross negligence claim. Lunneen responds that the Officers waived their arguments by failing to present them to the district court.

### 1. Are the Officers' arguments waived?

Plaintiff argues that the Officers waived the arguments they now raise. An argument not raised before the district court is generally waived on appeal. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (collecting cases). Two policies justify this rule: one, it makes our review easier, as the district court is the first to consider the issue; and two, it "ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Id.* In situations where there is waiver, whether the court decides to nonetheless consider the issue is a matter of discretion, "to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

Both Officers argue that the district court erred by permitting the gross negligence in the denial of medical care theory to proceed, as it was a new theory raised only in response to summary judgment. As the district court decided this issue below, the purpose of the waiver doctrine (to ease our review and prevent surprise issues) is not served in this case and does not preclude review. *Scottsdale*, 513 F.3d at 552; *see also Singleton*, 428 U.S. at 120 ("It is the general rule, of course, that a federal appellate court does not consider an issue *not passed upon below*." (emphasis added)); *Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 974 (7th Cir. 2019) ("If the district court raises an issue sua sponte and the appellate brief is the first opportunity to discuss it, the waiver rule does not preclude review.").

Johnson also argues that summary judgment is proper based on the merits of the gross negligence claim. Johnson did not raise any merits concerns below, nor did the district court make any merits determinations. Thus, for our appellate purposes, Johnson waived his merits arguments.

### 2. Did the district court improperly allow a new argument to be raised in response to a motion for summary judgment?

It is improper for a plaintiff to raise a new legal claim or theory for the first time in response to a summary judgment motion. *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). To allow a plaintiff to do so "would subject defendants to unfair surprise." *Id.*; *see also Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983) ("[W]hen a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided that such a shift in the thrust of the case does not work to the prejudice of the opposing party." (cleaned up) (quoting *Ogala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979)). The proper course of action is for a plaintiff to amend their complaint and set forth the new claim. *Tucker*, 407 F.3d at 788. Although the Federal Rules of Civil Procedure provide for liberal notice pleading at the *outset* of litigation, those liberal pleading standards are inapplicable at summary judgment, because by that time "the gravamen of the dispute [has been] brought frankly into the open for inspection by the court." *Id.* (alteration in original) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13 (2002)).

Notwithstanding the above, a complaint need not expressly plead legal theories; it need only "plead factual allegations that impliedly establish[] at least one viable theory." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). It is only after the moving party seeks summary judgment that a responding party must "'come forward with every legal theory' on which he relied." *Id.* (quoting *Nat'l Credit Union Admin. v. Mich. Nat'l Bank of Detroit*, 771 F.2d 154, 161 (6th Cir. 1985)).

The factual allegations set forth in the complaint support the "new" basis for the gross negligence claim. Thus, the Officers were not subject to unfair surprise, and the district court did

not err by allowing the claim to proceed. *See, e.g.*, *Worsham*, 705 F.2d at 825 (finding no unfair surprise when "the complaint alleged facts that would support a claim on a theory of implied indemnity or indemnity by operation of law"); *Bard v. Brown Cnty., Ohio*, 970 F.3d 738, 750 (6th Cir. 2020) ("[T]he parameters of [the plaintiff's] § 1983 claim . . . were the same at summary judgment as they were when she filed her Amended Complaint" and thus, a new theory did not "subject defendants to unfair surprise." (citation omitted); *Grinnell v. City of Taylor*, No. 21-2748, 2022 WL 1562291, at *5 (6th Cir. May 18, 2022) (finding no expansion of the complaint when the plaintiff "did not use the phrase 'failure to intervene,'" because "he alleged conduct that, for all intents and purposes, put Defendants on notice that he intended to bring a failure to intervene claim"). Of course, "[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment." *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) (alteration in original; citation omitted).

## III. CONCLUSION

For these reasons, we DISMISS the fact-based portions of the appeal, and AFFIRM the portions of the appeal that are properly before us.

MURPHY, Circuit Judge, concurring in part and dissenting in part. Jack Lunneen's bizarre middle-of-the-night behavior gave Sergeant Roger Johnson and Officer James Wyss a fair basis to detain him. *See Lunneen v. Village of Berrien Springs*, 2022 WL 16569574, at *4 (W.D. Mich. Nov. 1, 2022). Still, I concur in much of Judge McKeague's thoughtful decision requiring a jury to decide whether the officers acted lawfully before Lunneen's tragic death. In particular, a jury must decide whether Sergeant Johnson used excessive force in violation of the Fourth Amendment. Johnson mainly argues that he did not put any body weight on Lunneen's back when handcuffing him. While I might have sided with Johnson were I a juror, a dispute of fact exists on that question. And Johnson does not dispute that he would have violated clearly established law if he had gratuitously knelt on Lunneen with suffocating force. *See Martin v. City of Broadview*, 712 F.3d 951, 961 (6th Cir. 2013); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004).

I also agree with the majority's resolution of the state-law gross-negligence claims against Johnson and Wyss. At the summary-judgment stage, a plaintiff cannot raise new factual theories if the complaint did not previously allege them. *See Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019). But the plaintiff can raise new legal theories if those theories rest on the complaint's previously alleged facts. *See Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). The state-law claims on appeal here fall within the latter rule, not the former one.

I part ways only with the majority's resolution of the Fourth Amendment claims against Officer Wyss. According to the district court, a reasonable jury could find that two of Wyss's actions violated the Fourth Amendment. *Lunneen*, 2022 WL 16569574, at *7–9. Even accepting that court's view of the record, however, our precedent would not have alerted Wyss of these purported Fourth Amendment violations. I thus would grant him qualified immunity. *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam).

Start with Wyss's first action. While Wyss tried to handcuff Lunneen, Lunneen got a "pretty good" grip of Wyss's leg. Wyss Dep., R.81-2, PageID 784. To get Lunneen off him, Wyss testified, he placed his thumb underneath Lunneen's jaw and pushed on Lunneen's mandibular nerve. The district court held that a factual dispute existed over the amount of "mandibular pressure" that Wyss used and the "length of time" that he used this force. *Lunneen*, 2022 WL 16569574, at *7. That is, the record leaves unclear how much force Wyss used on the margins. Did he put pressure only on Lunneen's jaw with his thumb or did he also put pressure on Lunneen's neck with his hand? And did Wyss employ this pressure for just a second or for, say, ten seconds?

Yet these factual disputes do not show that Wyss violated clearly established law because of an important *undisputed* fact: Wyss used his mandibular-pressure technique only after Lunneen grabbed his leg. *See id.* at *8. What was Wyss supposed to do at that point? Stand there until Lunneen decided to let go on his own? None of our cases would support that rule. To the contrary, an officer may use "pressure point submissions" even to handcuff a passively resisting suspect. *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006).

Admittedly, Wyss needed to use a level of force reasonably commensurate with Lunneen's actions. As an extreme example, Lunneen's grabbing of Wyss's leg would not have allowed Wyss to open fire on him. But a reasonable jury could not find that Wyss used anything like this deadly force. And "[t]he mere existence of *some* alleged factual dispute" about the precise amount of force cannot defeat summary judgment for Wyss. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

At most, the district court held that a jury could find that Wyss used an amount of force that "contributed to the alleged asphyxiation." *Lunneen*, 2022 WL 16569574, at *8. Accepting this ambiguous level of force, what case would clearly establish that Wyss's efforts to remove

Lunneen from his leg qualified as "excessive" in violation of the Fourth Amendment? Lunneen's brother (the Plaintiff here) relies on three of our cases. *See Martin*, 712 F.3d at 958–63; *Griffith v. Coburn*, 473 F.3d 650, 657–60 (6th Cir. 2007); *Champion*, 380 F.3d at 901–05. But none of these cases would have "put" Wyss "on notice that his specific conduct was unlawful." *Rivas-Villegas*, 142 S. Ct. at 8; *see Wiley v. City of Columbus*, 36 F.4th 661, 669–70 (6th Cir. 2022).

*Champion* does Lunneen's brother no good for an obvious reason. The officers in that case engaged in the challenged force "*after*" they had subdued and handcuffed the decedent. *Martin*, 712 F.3d at 961; *see Champion*, 380 F.3d at 903. Here, it is undisputed that Wyss used his force because Lunneen had a "pretty good" grip of his leg. Wyss Dep., R.81-2, PageID 784.

*Martin* is at least closer to this case because the plaintiff there challenged the officers' efforts to detain the decedent—not their actions after they had done so. But the officers in *Martin* used much more force. They jumped on top of the decedent and repeatedly struck him. 712 F.3d at 955. One officer inflicted "compliance body shots" with his knee and hit the decedent in the "face, back, and ribs at least five times." *Id.* Another hit the decedent in the face with "hammer punches," straddled the decedent, and choked him. *Id.* A dispute of fact also existed over whether the decedent actively resisted or merely struggled to breathe during this time. *Id.* at 962. Here, by contrast, Wyss did not strike or jump on Lunneen. His mandibular-pressure technique was far less forceful. And he engaged in this technique only because Lunneen had "offered *some* resistance by grabbing [his] leg." *Lunneen*, 2022 WL 16569574, at *8.

This conclusion leaves *Griffith*. There, the decedent passively resisted the officers' attempt to handcuff him. 473 F.3d at 653. One of the officers then suddenly "jumped" on him, put him in a chokehold, and struggled with him for several minutes. *Id.* No reasonable jury could equate

Wyss's force to a minutes-long chokehold. And again, no facts would allow a reasonable jury to conclude that Wyss used this force "without provocation" from Lunneen. *Id.* at 657.

In short, I agree that some factual disputes exist—as they almost always do in these types of cases. But these factual disputes do not always require a jury trial. And here, the disputes are not "*material*" to the legal question whether Wyss's force violated clearly established law. *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 248). Even resolving the disputes in favor of Lunneen's brother, I would grant Wyss qualified immunity for his first use of force.

Turn to Wyss's second challenged action. The officers eventually handcuffed Lunneen's hands behind his back. At this point, their body-camera videos show a non-moving Lunneen lying on the ground. The district court suggested that the "jury must decide" whether he was lying face-down on his stomach or on his side. *Lunneen*, 2022 WL 16569574, at *9. In my view, the video leaves no doubt that he was not lying on his stomach and instead was (at least) partially on his left side with his face and stomach turned to his right. *See Scott*, 550 U.S. at 380–81. While Johnson waived down a medic for the next two minutes, Wyss stood or knelt next to Lunneen and held the chain between the handcuffs with one hand. *See Lunneen*, 2022 WL 16569574, at *2, *9.

The district court decided that a factual dispute existed over whether Wyss "applied substantial or significant pressure while holding Lunneen's handcuffs" and over whether holding the handcuffs "created asphyxiating conditions" for Lunneen. *Id.* at *9. It is not clear to me what type of pressure the district court had in mind. Did the court mean to suggest that Wyss was pushing his hand holding the handcuffs into Lunneen's (partially turned) back? Or did it mean to suggest that Wyss had been pulling up on the handcuffs while standing over him? In all events, the district court held that this handcuff-holding pressure could have violated the following legal rule from our cases: "'creating asphyxiating conditions by putting substantial or significant

pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable force.'" *Kulpa ex rel. Kulpa v. Cantea*, 708 F. App'x 846, 851 (6th Cir. 2017) (quoting *Champion*, 380 F.3d at 903); *see Lunneen*, 2022 WL 16569574, at *9.

Yet none of the cases would have put Wyss "on notice" that his handcuff-holding pressure violated the Fourth Amendment. *Rivas-Villegas*, 142 S. Ct. at 8. In *Martin*, two officers "continued to hold" a subdued decedent "in a face-down position," one with an arm and the other with a hand. 712 F.3d at 955 & n.1. Here, no reasonable jury could find that Wyss "placed [his] arms on [Lunneen's] back to restrain him" while Lunneen remained face-down. *Id.* Likewise, the officers in *Champion* created asphyxiating conditions by "placing their weight upon [the decedent's] body by lying across his back and simultaneously pepper spraying him." 380 F.3d at 903. And in *Kulpa*, one officer put his knee in the decedent's back while three others held down his legs with their feet. 708 F. App'x at 849, 852. Wyss was not lying on top of Lunneen, putting any body weight on him, or holding him face down. Instead, any pressure that Wyss used arose merely from holding the handcuffs. We would have to significantly enlarge the scope of the legal rule from these earlier cases to extend it to Wyss's conduct in this case.

For these reasons, I respectfully concur in part and dissent in part.